**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| MASON COMPANIES, INC., ) | |
| ) | Civil Action No. 10-cv-00597-slc |
| Plaintiff, ) | |
| v. ) | |
| ) | |
| BROWN SHOE COMPANY, INC., ) | JURY TRIAL DEMANDED |
| and ) | |
| SHOES.COM, INC. ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

---

**FIRST AMENDED COMPLAINT AND JURY DEMAND**

---

Plaintiff MASON COMPANIES, INC. ("Mason") for its Complaint against Brown Shoe Company, Inc. and Shoes.com, Inc. ("Defendants"), alleges as follows upon information and belief except for allegations pertaining to those that are made on personal knowledge:

**PRELIMINARY STATEMENT**

1.      Mason has priority to use and control the use of the SHOEMALL mark in connection with the retail sale of footwear based on its extensive use of that and related marks in commerce and its registration of the mark with the United States Patent and Trademark Office. Mason is the owner of U.S. Trademark Registration Nos. 2,605,442 and 2,992,709 for the mark SHOE MALL, Registration Nos. 2,701,366 and 3,021,263 for the mark SHOEMALL, and Registration No. 3,299,876 for the mark SHOEMALL.COM (and design) in connection with mail order and computerized online retail services in the field of footwear and clothing.  Mason's

SHOE MALL, SHOEMALL and SHOEMALL.COM (and design) marks are collectively Mason's "SHOEMALL Marks."

2.     Mason has advertised and promoted its SHOEMALL Marks extensively and has made substantial sales of products under the SHOEMALL Marks.  As a result of Mason's extensive use, advertising, and promotion, the SHOEMALL Marks have achieved widespread consumer recognition, making SHOEMALL a strong mark entitled to a broad scope of protection against infringement.

3.     Defendants, with actual and constructive knowledge of Mason's SHOEMALL service mark, began using the mark SHOEMALL in connection with the offering of the same products as Mason, namely shoes.

4.     Defendants perpetuated a scheme to bid on various keywords on search engines that included Mason's SHOEMALL mark, causing Defendants' advertising to be displayed on the search results page associated with Mason's SHOEMALL mark.

5.     Defendants use Mason's SHOEMALL mark to promote their own shoes and online shoe sale services via the same channel as Mason, causing Mason irreparable harm.

6.     Defendants' products that are served to consumers via the Internet and World Wide Web in connection with Mason's SHOEMALL mark are likely sold to the same types of consumers as Mason's goods and services under the SHOEMALL Marks.

7.     Mason seeks injunctive and monetary relief with respect to Defendants' promotion and sale of any goods or services under the SHOEMALL mark that are likely to mislead and confuse consumers about the source, sponsorship, and affiliation of the goods or

services under the SHOEMALL Marks and that trade upon the goodwill of Mason's SHOEMALL Marks.

## THE PARTIES

8.     Mason is a corporation organized and existing under the laws of the State of Wisconsin, with its principal place of business at 1251 1st Ave., Chippewa Falls, Wisconsin 54729.

9.     Defendant Brown Shoe Company, Inc. is a corporation organized and existing under the laws of New York and having a principal place of business at 8300 Maryland Avenue, St. Louis, Missouri 63105.

10.     Defendant Shoes.com, Inc. is a corporation organized and existing under the laws of Delaware.

11.     Defendants are interrelated. Shoes.com, Inc. is a subsidiary of Brown Shoe Company, Inc.

## JURISDICTION AND VENUE

12.     This is a case for trademark infringement and unfair competition under the Lanham Act, 15 U.S.C. 1051, *et seq.*, contributory and vicarious trademark infringement under the Lanham Act, 15 U.S.C. 1051 *et seq.*, deceptive trade practices arising under the Wisconsin Unfair Trade Practices Act, Wis. Stat. § 100.20, unlawful trade practices under the Wisconsin False Advertising Statute, Wis. Stat. § 100.18, and common law unfair competition.

13.     This Court has jurisdiction of this action under 28 U.S.C. §§ 1331, 1332 and 1338, as well as 15 U.S.C. § 1121. It has subject matter jurisdiction over the supplemental state

claims pursuant to 28 U.S.C. § 1367(a).  There is diversity among the parties and the amount in controversy exceeds $75,000.

14.     This Court has personal jurisdiction over Defendants by virtue of Defendants' website located at www.shoes.com that interacts with consumers in the State of Wisconsin and, upon information and belief, use of the alleged infringing activity with consumers in the State of Wisconsin.

15.     Venue is proper in this district under 28 U.S.C. § 1391(b) and (c).

## THE BUSINESS OF PLAINTIFF

16.     Founded in 1904, Mason has established a reputation of marketing over 500 styles of shoes, boots, sandals and other footwear.  Today, Mason is the largest mail order footwear cataloger in the United States.

17.     On December 12, 1997, Mason applied for registration of the mark SHOE MALL, Application Ser. No. 75-982,157, in class 35 for "computerized online retail services in the field of footwear" with the United States Patent and Trademark Office ("USPTO").  On August 6, 2002, the USPTO granted Mason Registration No. 2,605,442.  A copy of a report from the Trademark Application and Registration Retrieval system ("TARR report") regarding Registration No. 2,605,442 is attached hereto as **Exhibit 1**.  Registration No. 2,605,442 is incontestable and is therefore conclusive evidence of the validity of the registered mark, of the registration of the mark, of Mason's ownership of the mark and of Mason's exclusive right to use the mark in commerce pursuant to Sections 15 and 33(b) of the Lanham Act, 15 U.S.C.§§ 1065 and 1115(b).

4

18.     On December 12, 1997, Mason applied for registration of the mark SHOE

MALL, Application Ser. No. 75-404,671, in class 35 for "computerized online retail services in

the field of clothing" with the USPTO.  On, September 6, 2005, the USPTO granted Mason

Registration No. 2,992,709.  A copy of the TARR report regarding Registration No. 2,992,709 is

attached hereto as **Exhibit 2**.

19.     On June 6, 2000, Mason applied for registration of the mark SHOEMALL,

Application Ser. No. 76-970,080, in class 35 for "computerized on-line retail services in the field

of footwear" with the USPTO.  On, March 25, 2003, the USPTO granted Mason Registration

No. 2,701,366.  A copy of the TARR report regarding Registration No. 2,701,366 is attached

hereto as **Exhibit 3**.  Registration No. 2,701,366 is incontestable and is therefore conclusive

evidence of the validity of the registered mark, of the registration of the mark, of Mason's

ownership of the mark and of Mason's exclusive right to use the mark in commerce pursuant to

Sections 15 and 33(b) of the Lanham Act, 15 U.S.C.§§ 1065 and 1115(b).

20.     On June 6, 2000, Mason applied for registration of the mark SHOEMALL,

Application Ser. No. 76-064,226, in class 35 for "computerized on-line retail services in the field

of clothing; mail order catalog services featuring footwear and clothing" with the USPTO.  On

November 29, 2005, the USPTO granted Mason Registration No. 3,021,263.  A copy of the

TARR report regarding Registration No. 3,021,263 is attached hereto as **Exhibit 4**.

21.     On March 24, 2006, Mason applied for registration of the mark SHOEMALL.com

(and design), Application Ser. No. 78-845,714, in class 35 for "computerized online retail store

services in the field of footwear, clothing and accessories; mail order catalog services featuring

footwear, clothing and accessories" with the USPTO.  On September 25, 2007, the USPTO

granted Mason Registration No. 3,299,876.  A copy of the TARR report regarding Registration No. 3,299,876 is attached hereto as **Exhibit 5.**

22.     Registration Nos. 2,605,442, 2,992,709, 2,701,366, 3,021,263, and 3,299,876 are *prima facie* evidence of the validity of the registered marks, of the registration of the marks, of Mason's ownership of the marks, and of Mason's exclusive right to use the registered marks in commerce on or in connection with the goods and services specified therein pursuant to Section 7 of the Lanham Act, 15 U.S.C. § 1057.

23.     Mason has used the mark SHOEMALL in connection with its sale of footwear and apparel through the Internet, mail order catalog services, through retail locations, and in various printed materials.

24.     On December 2, 1997, Mason registered the domain name shoemall.com.  In 2001, Mason launched its online footwear website using the trademark SHOEMALL at http://www.shoemall.com.  Mason's online store was designed to provide a location for consumers to view and purchase a wide variety of brands in one easy and convenient website.

25.     In addition to Mason's online retail website at http://www.shoemall.com, Mason maintains an online retail location under the mark SHOEMALL at Amazon.com.  Mason's Amazon.com website is located at http://www.amazon.com/Shoemall.

26.     Mason has invested a significant amount of money to promote its products and services related to the sale of footwear and clothing under its SHOEMALL Marks.  As a result, consumers across the country purchase footwear and clothing through Mason.

27.     Mason uses online advertising to promote its products and services sold in connection with the SHOEMALL Marks.

28.     Mason's SHOEMALL Marks are distinctive as service marks for Mason's retail and online services in the field of footwear and clothing.

29.     Mason's SHOEMALL Marks are recognized and relied upon as identifying Mason as the sole source of services and products relating to the footwear and clothing offered through mail order catalogs and online, and as distinguishing Mason's goods and services from the goods and services of others.  As a result, Mason's SHOEMALL Marks have acquired substantial goodwill and are an extremely valuable commercial asset.

## SEARCH ENGINE ADVERTISING

30.     Internet search engines (e.g. Google, Yahoo!, Bing, Ask, and AOL) enable consumers to locate specific companies and the online websites of those companies by keying in terms and performing searches of search engine databases.  After a consumer keys in a search term (e.g. "sports"), the search engine processes the request and produces search results matching the key term searched (e.g. "espn.go.com, foxsports.com, sportsillustrated.cnn.com, etc.").  The process of conducting a key term search on a search engine is nearly instantaneous (e.g., see the screenshot below showing over 5 billion results in .15 seconds).



sports                                              ✕    Search

About 5,790,000,000 results (0.15 seconds)                        Advanced search

31.     The speed of search requests allow consumers to rapidly key in a search term, view results of that query, select a destination, and arrive at the website of the selected company.

32.     Internet search engines produce two types of search results: organic and sponsored.  Organic search results are based on data collected by search engines from the Internet.  Search engines use crawlers, spiders, and other technology to learn and collect

information from various websites located on the Internet. Those results are then collected in a database. If a key term entered by a consumer matches the data collected from a particular website, that website may be produced as a search result.

33. Sponsored search results are links that are based on keywords purchased by advertisers. Several search engines and other websites have set up sponsored link programs as a way to generate revenue for the search engines. As part of a sponsored link program, advertisers purchase or bid on terms. Those terms are put into a database and linked to the advertiser's website or advertisement. If a consumer keys in an advertiser's purchased term, the advertiser's website link or advertisement will appear on the search results page.

34. One example of a sponsored link program is Google, Inc.'s AdWords program. The AdWords program enables advertisers to purchase or bid on keywords that generate an advertising link (called a "Sponsored Link") on the search results page. The Sponsored Link directs consumers to the advertiser's website or advertisement.

35. The search results page generally contains the searched term in the search box at the top of the page, followed by a mixture of organic and sponsored search results. The sponsored results generally occur before and to the side of the organic search results.

36. Google and other keyword advertising companies charge prices for advertisements based on a combination of various factors, which includes the quality score of the keyword, the bid amount placed, and competition for that particular keyword. Google explains "Quality Score" as:

The AdWords system calculates a 'Quality Score' for each of your keywords. It looks at a variety of factors to measure how relevant your keyword is to your ad text and to a user's search query. A keyword's Quality Score updates frequently and is closely related to its performance. In general, a high Quality Score means that your keyword will trigger ads in a higher position and at a lower cost-per-click (CPC).

37.     Placement on the search engine results page is affected by competition for keywords.  First page bids are based on the Quality Score and the current advertiser competition for that keyword.

38.     By purchasing or bidding on key terms that are based on a competitor's trademarks, advertisers trick consumers into believing that the advertiser's products or services are in some way related, endorsed, sponsored by, or affiliated with the competitor or the competitor's trademark.  Use of those trademarks by unauthorized entities can also drive the price of the advertising for the trademark owner.

39.     Advertisers who bid on a competitor's trademark through a search engine intentionally attempt to intercept consumers who are searching for a specific trademark owner's website.  Based on the ease of conducting a search and the speed of the search results, consumers may click on the competitor's website, many of whom do not realize they have clicked on the link to a company unrelated to the term placed in the search engine query box.

## **UNLAWFUL CONDUCT BY DEFENDANTS**

40.     Defendants had constructive notice of Mason's trademark rights in the SHOEMALL Marks as of December 12, 1997, based on Mason's application to register SHOE MALL as a federally registered trademark.

41.     Defendants had actual knowledge of Mason's trademark rights when they began using Mason's SHOEMALL marks in commerce.

42.     After Mason began use of its distinctive SHOEMALL service mark, Defendants purchased or bid on Mason's SHOEMALL mark through Google's AdWords program in connection with Defendants' online advertising, promotion, and marketing of competing products.

43.     Defendants perpetrated a scheme of using Mason's SHOEMALL trademarks to drive traffic searching for Mason's brand to its own website.  In addition to using Mason's SHOEMALL trademark in its online advertising, Defendants also purchased and used in its advertising various derivatives of Mason's SHOEMALL mark, including "shoemall coupon," "shoemall promotion," "shoemall promo," "shoemall sale," "shoemall.com," "shoemall com," "shoemall shoes," "www shoemall.com," "www shoemall," "shoemall footwear," and "shoemall promo code."

44.     The search terms used in Defendants' advertising are terms that consumers searching for Mason's SHOEMALL brand would use.

45.     Defendants deliberately chose not to inform consumers that it had no affiliation, connection, or association with the search terms the consumers were typing in to the search engines.

46.     The scheme employed by Defendants shows deceptive, malicious, and willful intent to trade on Mason's goodwill in its SHOEMALL mark.

47.     Defendants' use of Mason's SHOEMALL Marks was an opportunity to capitalize on Mason's established goodwill with its SHOEMALL Marks.

48.     By purchasing or bidding on Mason's trademark and trade name, Defendants seek to trick consumers into visiting Defendants' website, implying a false association with Mason

10

and its SHOEMALL brand or by directing consumers away from visiting Mason's actual SHOEMALL brand website.

49.    Defendants' use of Mason's SHOEMALL service mark as a key term that generates Defendants' advertisements for the same products and services is in interstate commerce, including Wisconsin.

50.    Defendants' use of the SHOEMALL service mark is likely to cause confusion, mistake, or deception as to the source of origin of Defendants' products and services in that customers and potential customers are likely to believe that the search engine results for Defendants' products and services based on the keyword "shoemall" are provided by, sponsored by, approved by, licensed by, affiliated or associated with, or in some other way legitimately connected to Mason.

51.    Defendants' use of the SHOEMALL mark is also likely to create initial interest confusion. Consumers keying in Mason's SHOEMALL mark into search engines are likely to be confused that the search results are associated, affiliated, endorsed, or in some other way connected with Mason.

52.    In addition to the use of Mason's SHOEMALL mark, the advertisements Defendants generate from the infringing keywords are nearly identical to Mason's own online advertising.

53.    Defendants replicate several components of Mason's advertisement, including the use of the ®, use of the term "Official Site," and commentary on "free shipping."  The combination of Defendants' use of Mason's trademark together with the use of similar elements in the advertisement show that confusion is likely.

**ShoeMall® - Official Site**
Find Great Deals on Brand Name Shoes - Free Shipping Everyday!
**ShoeMall**.com

**Shoes.com® Official Site**
Free Shipping, Exchanges & Returns on Stylish Footwear at Shoes.com!
www.**Shoes**.com/Official

54.     Defendants also have no right to use the ® in connection with "Shoes.com."

Upon information and belief, Defendants do not own a registered trademark for "Shoes.com."

55.     On July 13, 2010, upon learning of Defendants and its use of the SHOEMALL

marks, Mason sent actual notice to Defendants.  (**Exhibit 6.**)  Mason requested that Defendants

cease and desist from all current and planned activities related to the SHOEMALL mark and any

mark confusingly similar to the SHOEMALL Marks.

56.     Despite its knowledge regarding Mason's prior and superior rights in the

SHOEMALL Marks and without the authorization of Mason, Defendants failed to cease use of

SHOEMALL mark.

57.     Defendants were and are aware of the vast and valuable goodwill and reputation

represented and symbolized by Mason's SHOEMALL mark.  Defendants were and are also

aware that Mason's consumers and potential consumers rely upon Mason's SHOEMALL Marks

as distinguishing Mason's products from the products of others.

58.     Defendants' continued promotion of its products that compete with Mason's

SHOEMALL brand products and services using the SHOEMALL mark is likely to diminish the

goodwill associated with Mason's SHOEMALL Marks.

59.     Defendants' products sold in connection with the SHOEMALL marks are

promoted to the same customers as Mason's products and services.

60.     Defendants' continued use of the trademarks SHOEMALL harms Mason.  This harm is caused at a minimum by Defendants' use of the SHOEMALL as a keyword in connection with online advertising, which creates the commercial impression that Defendants are affiliated or associated with, endorsed by, or in some other way connected to Mason.

61.     Defendants' activities are likely to cause forward and/or reverse confusion or mistake or to deceive consumers into believing that their unauthorized products or services being promoted under the SHOEMALL mark are sponsored, licensed or authorized by, or affiliated, connected or otherwise associated with Mason or that Mason's products offered under the SHOEMALL Marks are sponsored, licensed or authorized by, or affiliated, connected or otherwise associated with Defendant or its products and services.

62.     Defendants' continued use of the SHOEMALL as a keyword is with the full knowledge of the prior ownership by Mason of its SHOEMALL Marks and Mason's rights to use and control the use of such marks.

63.     Defendants have acted and continue to act without regard to Mason's property rights and goodwill.

64.     Defendants' unauthorized use of SHOEMALL in association with its products and services has significantly injured Mason's interests and will continue to do so unless immediately enjoined.  Specifically, Defendants (a) have traded upon and threaten to further trade upon the significant and valuable goodwill in Mason's SHOEMALL Marks; (b) are  likely to cause public confusion as to the source, sponsorship, or affiliation of Defendant's products and/or services; (c) have damaged and threaten to further damage Mason's significant and valuable goodwill in its SHOEMALL Marks; (d) have injured and threaten to further injure

13

Mason's right to use its SHOEMALL mark as the exclusive indicia of origin of Mason's products and services in Wisconsin and throughout the United States; and (e) have lessened the capacity of Mason's SHOEMALL Marks to indicate that their products and services are sponsored by Mason.

65.     As a direct and proximate result of the likely confusion, mistake, or deception, Mason has suffered and will continue to suffer irreparable harm if the conduct of Defendants are not enjoined.

66.     Upon information and belief, Defendants will continue unlawfully to use the SHOEMALL mark to promote and provide its products and services, unless enjoined by the Court.

67.     Pursuant to 15 U.S.C. § 1117, Mason is entitled to recover the costs of this action. The nature of Defendants' unlawful acts renders this an "exceptional case," entitling Mason to an award of attorneys' fees under 15 U.S.C. § 1117(a).

68.     Mason has no adequate remedy at law.

69.     Mason respectfully requests a jury trial for this matter.

**FIRST CLAIM FOR RELIEF**
**FEDERAL TRADEMARK INFRINGEMENT (15 U.S.C. § 1114 *et seq*.)**

70.     Plaintiff repeats and realleges paragraphs 1-69 above.

71.     Mason's SHOEMALL Marks are distinctive.

72.     Defendants' use Mason's SHOEMALL mark in connection with the offering of products and services in interstate commerce.

73.     Defendants have used and continues to use the SHOEMALL mark without Mason's consent.

14

74.     Defendants use the SHOEMALL mark in a manner that is likely to cause confusion, to cause mistake, or to deceive as to source or origin among purchasers and/or users of those products and/or services.  These activities are likely to lead to confusion in the marketplace.

75.     Defendants' use of the SHOEMALL mark is likely to mislead and cause customers and/or the general public to believe that the Defendants' products and services are offered or endorsed by, associated or affiliated with, or under the authority of Mason. Defendants' use of the SHOEMALL mark infringes Mason's rights in its federally registered SHOEMALL Marks.

76.     Defendants' actions constitute trademark infringement under 15 U.S.C. § 1114.

77.     Defendants' actions have caused and are causing great and irreparable harm and damage to Mason, and unless permanently restrained and enjoined by this Court, such irreparable harm will continue.

78.     Pursuant to 15 U.S.C. § 1117, Mason is entitled to recover all of Defendants' profits, Mason's damages, as well as the costs of this action.  The intentional nature of Defendants' unlawful acts renders this an "exceptional case," entitling Mason to enhanced damages and an award of attorneys' fees under 15 U.S.C. § 1117(a).

## SECOND CLAIM FOR RELIEF
### FEDERAL UNFAIR COMPETITION (15 U.S.C. § 1125(a))

79.     Paragraphs 1 through 78 are incorporated and made a part of this Claim.

80.     Mason's SHOEMALL Marks are distinctive.

81. Defendants' use Mason's SHOEMALL mark in connection with the offering of products and services in interstate commerce.

82. Defendants' use of the SHOEMALL designation is likely to cause confusion, mistake, or deception as to the source of origin of the Defendant's products and services in that customers and potential customers are likely to believe that the products and services provided in connection with the SHOEMALL designations are provided by, sponsored by, approved by, licensed by, affiliated or associated with, or in some other way legitimately connected to Mason.

83. Defendants' use of the SHOEMALL designations are likely to cause confusion, mistake, or deception in that customers and potential customers are likely to believe there is sponsorship, approval, licensing, affiliation, association, or some legitimate connections between the products and services provided in association with Defendants' use of the SHOEMALL keywords and the products and services provided under Mason's SHOEMALL Marks.

84. As a direct and proximate result of the likely confusion, mistake, or deception, Mason has suffered and will continue to suffer irreparable harm if the conduct of Defendants is not enjoined.

85. The likely confusion, mistake, or deception caused by Defendant is in violation of 15 U.S.C. § 1125(a).

86. Defendants' actions have caused and are causing great and irreparable harm and damage to Mason, and unless permanently restrained and enjoined by this Court, such irreparable harm will continue.

87. Pursuant to 15 U.S.C. § 1117, Mason is entitled to recover all of Defendants' profits, Mason's damages, as well as the costs of this action. The intentional nature of

Defendants' unlawful acts renders this an "exceptional case," entitling Mason to enhanced damages and an award of attorneys' fees under 15 U.S.C. § 1117(a).

## SECOND CLAIM FOR RELIEF
## CONTRIBUTORY AND VICARIOUS TRADEMARK INFRINGEMENT

88.     Plaintiff hereby realleges and incorporates by reference in Paragraphs 1-87 of this Complaint as if fully set forth herein.

89.      Defendants are liable for contributing to the direct violations committed by others.  Defendants intentionally induced and have continued to instruct others to use Mason's SHOEMALL marks in connection with keyword advertising having reason to know that use of the keywords constitutes trademark infringement.

90.     Mason has notified Defendants multiple times that its use of Mason's SHOEMALL marks on third party websites such as Google was an infringement.  Further, Defendants are in control of those who place the keywords onto third party websites such as Google.   Defendants' continued use of third parties to perpetuate its infringing conduct constitutes contributory trademark infringement.

91.      Defendants vicariously infringe Mason's marks through vicarious infringement. Defendants partner with third party providers who use Mason's SHOEMALL marks in commerce to entice consumers to visit Defendants' websites.   The relationship between Defendants and its third party providers gives the authority to bind or exercise control over the advertising at issue.

92.     As a direct and proximate result of the likely confusion, mistake, or deception, Mason has suffered and will continue to suffer irreparable harm if Defendants conduct is not enjoined.

93.     The likely confusion, mistake, or deception caused by Defendant is in violation of 15 U.S.C. §§ 1114 and 1125(a).

94.     Defendants' actions have caused and are causing great and irreparable harm and damage to Mason, and unless permanently restrained and enjoined by this Court, such irreparable harm will continue.

95.     Pursuant to 15 U.S.C. § 1117, Mason is entitled to recover all of Defendants' profits, Mason's damages, as well as the costs of this action.  The intentional nature of Defendants' unlawful acts renders this an "exceptional case," entitling Mason to enhanced damages and an award of attorneys' fees under 15 U.S.C. § 1117(a).

## FOURTH CLAIM FOR RELIEF
## STATE UNFAIR TRADE PRACTICES (Wis. Stat. § 100.20)

96.     Paragraphs 1 through 95 are incorporated and made a part of this Claim.

97.     Defendants have engaged in unfair trade practices in violation of Wis. Stat. § 100.20 because its use of the SHOEMALL designation facilitates or promotes an unfair method of competition, practice, or activity in business.  Defendants' acts are likely to cause confusion, mistake, or deception as to the source of origin of Defendants' products and services in that customers and potential customers are likely to believe that the products and services provided under the SHOEMALL designation are provided by, sponsored by, approved by,

licensed by, affiliated or associated with, or in some other way legitimately connected to Mason or Mason's SHOEMALL Marks.

98.     As a direct and proximate result of the likely confusion, mistake, or deception, Mason has suffered and will continue to suffer pecuniary loss and irreparable harm if the conduct of Defendants is not enjoined.

99.     Pursuant to Wis. Stat. § 100.20(5), Mason is entitled to recover an amount twice its loss as well as its costs and attorneys' fees.

**FIFTH CLAIM FOR RELIEF**
**STATE FALSE ADVERTISING (Wis. Stat. § 100.18)**

100.    Paragraphs 1 through 99 are incorporated and made a part of this Claim.

101.    Defendants have engaged in false advertising in violation of Wis. Stat. § 100.18 because its use of the SHOEMALL designation is untrue, deceptive or misleading for the purpose of increasing the market for its services.  Defendants' use of the SHOEMALL designation is likely to deceive or mislead consumers as to the source of origin of Defendants' services in that customers and potential customers are likely to believe that the products and services provided under the SHOEMALL designation are provided by, sponsored by, approved by, licensed by, affiliated or associated with, or in some other way legitimately connected to Mason or Mason's SHOEMALL Marks.

102.    As a direct and proximate result of the likely confusion, mistake, or deception, Mason has suffered and will continue to suffer pecuniary loss and irreparable harm if the conduct of Defendant is not enjoined.

103.    Pursuant to Wis. Stat. § 100.18(11)(b)(2), Mason is entitled to recover its costs, disbursements, and reasonable attorneys' fees.

## SIXTH CLAIM FOR RELIEF
## STATE COMMON LAW UNFAIR COMPETITION

104.    Paragraphs 1 through 103 are incorporated and made a part of this Claim.

105.    Defendants' use of the SHOEMALL designation is likely to cause confusion,

mistake, or deception as to the source of origin of the SHOEMALL products and services in that

customers and potential customers are likely to believe that Defendants' products and services

are provided by, sponsored by, approved by, licensed by, affiliated or associated with, or in some

other way legitimately connected to Mason or Mason's SHOEMALL Marks.

106.    Defendants' conduct constitutes unfair competition in violation of the rights of

Mason.

107.    Defendants' acts were taken in willful, deliberate and/or intentional disregard of

Mason's rights.

108.    As a direct and proximate result of the unfair competition of Defendants, Mason

has suffered and will continue to suffer irreparable harm if the conduct of Defendants are  not

enjoined.


## PRAYER FOR RELIEF

WHEREFORE, Mason respectfully requests judgment against Defendants as follows:

A.    Permanently enjoining and restraining Defendants and their respective

partners, agents, servants, employees and attorneys, and those persons in active concert or

participation with Defendants from:

1.    Using on or in connection with the production, manufacture,

advertisement, promotion, display (including on the Internet) or otherwise,

20

displaying for sale, offering for sale, sale, or distribution of any product or service or for any purposes whatsoever, the mark SHOEMALL or any other mark confusingly similar to Mason's SHOEMALL Marks.

2.      Using the mark SHOEMALL or any other mark confusingly similar to Mason's SHOEMALL Marks in connection with keyword advertising.

3.      Representing by any means whatsoever, directly or indirectly, or doing any other acts or things calculated or likely to cause confusion, mistake or to deceive purchasers into believing that Defendants' products or services originate with or are the products or services of Mason or that there is any affiliation or connection between Mason and their products or services and Defendants and their products or services, and from otherwise competing unfairly with Mason;

B.      Directing that Defendants, at their own expense, recall all the marketing, promotional and advertising materials and remove all signage that bears or incorporates any mark or design with SHOEMALL not in conformance with Section A(1) of Mason's Prayer For Relief, or any mark confusingly similar to Mason's SHOEMALL Marks, which it has distributed, sold, shipped, or used;

C.      Directing that Defendants deliver to Mason's attorneys or representatives for destruction all labels, signs, prints, packages, molds, plates, dies, wrappers, receptacles, and advertisements in its possession or under its control, bearing the non-conforming SHOEMALL marks or any simulation, reproduction, copy or colorable imitation of Mason's SHOEMALL Marks, and all films, discs, plates, molds, matrices, and any other means of making the same.

D.      Directing such other relief as the Court may deem appropriate to prevent the trade and public from forming any erroneous impression that any product or service promoted or provided by Defendants are authorized by Mason or related in any way to Mason's products or services.

E.      Directing Defendants to file with this Court and to serve upon Mason within thirty (30) days after service upon Defendants of an injunction in this action, a written report by Defendants, under oath, setting forth in detail the manner in which Defendants have complied with the injunction.

F.      Awarding Mason as damages Defendants' profits from its sale of merchandise while using the SHOEMALL designations.

G.      Awarding Mason all damages and other remedies permitted by 15 U.S.C. § 1117(a), trebled.

H.      Awarding Mason reasonable attorneys' fees and the costs of this action.

I.      Awarding Mason such further relief as this Court deems just and proper.

### **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury of all issues so triable.

Respectfully submitted,

**MERCHANT & GOULD**

Dated:  January 27, 2011                    By: _s/William D. Schultz_
                                                 Scott W. Johnston
                                                 William D. Schultz
                                                 Merchant & Gould, P.C.
                                                 3200 IDS Center
                                                 80 South Eighth Street
                                                 Minneapolis, MN  55402-2215
                                                 Telephone:  (612) 332-5300
                                                 Facsimile:  (612) 332-9081
                                                 sjohnston@merchantgould.com
                                                 wschultz@merchantgould.com

                                                 *Attorneys for Plaintiff*
                                                 *Mason Companies, Inc.*